**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   JERRI CURRY,                                    No. C-12-03940 WHO (DMR)

12              Plaintiff,                           **ORDER ON PARTIES' JOINT
                                                     DISCOVERY LETTER**
13        v.

14   CONTRA COSTA COUNTY,

15              Defendant.
     _____/
16

17        Plaintiff Jerri Curry, Defendant Contra Costa County ("the County"), and non-party Public

18   Employees Union Local One ("Local One") filed a joint discovery letter regarding Defendant's

19   motion to compel the production of documents. [Docket No. 40 (Jt. Letter).] The court conducted a

20   hearing on August 22, 2013. Following the hearing, the court conducted an *in camera* review of

21   certain documents. For the following reasons, Defendant's motion is granted in part.

22                                    **I. Discussion**

23        **A.    Background**

24        Plaintiff Jerri Curry is currently employed as a Mental Health Clinical Specialist (MHCS) for

25   Defendant. Plaintiff, who is 69 years old, worked as a permanent part-time MHCS at the Martinez

26   Detention Facility from 2003 until March 2010, when she transferred to a full-time position at the

27   Central County Mental Health Clinic. Plaintiff alleges that in 2011 and 2012, she applied for and

28   was passed over for available positions at the Martinez Detention Facility, and that Defendant

United States District Court

For the Northern District of California

1    instead filled the positions with younger unlicensed and less-qualified applicants.  Plaintiff alleges

2    that after she filed a union grievance and complaints of age discrimination with the EEOC and

3    DFEH, Defendant retaliated against her by denying her overtime, revoking her security clearance at

4    the jail, and preventing her access to inmates.  Defendant denies that it discriminated against

5    Plaintiff; it contends that Plaintiff's loss of her security clearance resulted from her own misconduct

6    and that Plaintiff has the same access to inmates as provided to others who are similarly situated.

7    Plaintiff brings claims for age discrimination, retaliation, and failure to take reasonable steps to

8    prevent discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29

9    U.S.C. § 621 *et seq.*, and the California Fair Employment and Housing Act, Cal. Govt. Code §

10   12940 *et seq.*

11        Defendant propounded a request for the production of all communications between Plaintiff

12   and her union, Local One, relating to discrimination or harassment based on age, retaliation, and

13   Plaintiff's employment with the County.  (Jt. Letter 2 n.1.)  Plaintiff withheld responsive documents

14   and produced a privilege log listing ten documents.  (Jt. Letter Ex. A (privilege log).)  Plaintiff's

15   privilege log indicates that the documents are withheld on the basis of the "union-employee

16   communication" privilege, the right to privacy, and the attorney-client privilege.[1]  Local One

17   maintains that the documents are "privileged confidential communications" between Plaintiff and

18   Local One and are not discoverable.  (Jt. Letter 7.)  Plaintiff joins Local One's privilege objection

19   and also argues that the documents are not relevant to this matter.  (Jt. Letter 6.)  Defendant seeks an

20   order compelling Plaintiff to produce the ten documents and re-opening Plaintiff's deposition for the

21   purpose of questioning her about the documents.

22        **B.    Legal Standards**

23        Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding

24   any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).

25   "Relevant information need not be admissible at the trial if the discovery appears reasonably

26   calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  "Relevancy,

27   _____

28        [1] Plaintiff is no longer asserting the attorney-client privilege as to any of the documents at issue. (Jt. Letter 5.)

2

1  for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary

2  boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679-80 (N.D. Cal. 2006).  "[T]he party

3  opposing discovery has the burden of showing that discovery should not be allowed, and also has the

4  burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac.*

5  *Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012).  Federal

6  Rule of Civil Procedure 26 also provides that a party withholding information under a claim that it is

7  privileged or subject to protection as trial preparation material must: (i) expressly make the claim;

8  and (ii) describe the nature of the documents, communications, or tangible things not produced or

9  disclosed in a manner that, without revealing information itself privileged or protected, will enable

10  the parties to assess the claim.  Fed. R. Civ. Proc. 26(b)(5)(A).  A privilege should be asserted within

11  thirty days of a request for production.  *See* Fed. R. Civ. P. 34(b)(2)(A).

**C.    Analysis**

**1.    Relevance of the Requested Documents**

14  As a threshold matter, Plaintiff claims that many of the documents at issue are not relevant to

15  this litigation.  The ten documents are dated from 2009 through 2012.  Plaintiff's lawsuit is based

16  upon her claim that Defendant hired younger, less-qualified applicants for the positions at the

17  Martinez Detention Facility in 2011 and 2012, and the alleged subsequent retaliation following her

18  grievance and EEOC and DFEH complaints regarding those hiring decisions.  (Compl. ¶¶ 22-33.)

19  As Plaintiff notes, the documents listed at privilege log entries one through seven are

20  communications that Plaintiff had with her union from 2009 and 2010, and thus predate the

21  discrimination and retaliation at issue in this case.[2]

22  Defendant argues that these documents are relevant because they may support Defendant's

23  defense that there were legitimate, non-discriminatory reasons for its decisions to offer positions to

24  other individuals.  In addition, Defendant argues that the documents may support its theory that

_____

27  [2] The documents logged as entries eight, nine, and eleven clearly are relevant, as they pertain to the grievances that Plaintiff filed with her union regarding Defendant's actions that form the basis for this case.  As discussed below, Plaintiff and Local One assert that these documents are protected by a union-employee privilege.

1   Plaintiff has a pattern of making unfounded complaints of retaliation by her supervisors, and are thus

2   relevant to Plaintiff's credibility.

3       The court conducted an *in camera* review of these documents, and concludes that entry

4   number six, an email string from 2010 with the subject line "Fw: Re: Retaliation" (bates-stamped

5   P00470-P00472) is discoverable, based upon the theories of relevance proffered by Defendant.[3]  As

6   discussed below, because the document is not privileged, it must be produced to Defendant.  The

7   remaining documents in this category are not relevant and are thus not subject to discovery.

8                    **2.       Union-Employee Communications**

9       Plaintiff and Local One claim all of the documents at issue are protected by the "union-

10  employee communication" privilege.  Local One describes the documents as "confidential

11  communications between the Plaintiff and her Union representatives in connection with the Union's

12  representation of its members in grievance proceedings pursuant to a collective bargaining

13  agreement."  (Jt. Letter 7.)

14      This court exercises federal question jurisdiction over Plaintiff's federal claims pursuant to

15  28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's pendent state law claims.  Therefore,

16  the federal law of privilege applies in this case.  *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839-40

17  (2005) (noting that "[w]here there are federal question claims and pendent state law claims present,

18  the federal law of privilege applies.") (citing Fed. R. Evid. 501); *see also Wm. T. Thompson Co. v.*

19  *Gen. Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982) ("[W]hen there are federal law claims in a

20  case also presenting state law claims, the federal rule favoring admissibility, rather than any state

21  law privilege, is the controlling rule . . . . [T]he general rule in federal practice disfavor[s] privileges

22  not constitutionally based.").  Federal Rule of Evidence 501 provides federal courts with "the

23  flexibility to develop rules of privilege on a case-by-case basis."  *Trammel v. U.S.*, 445 U.S. 40, 47

24  (1980).  However, it is well-established that the federal "policy favoring open discovery requires

25  that privileges must be 'strictly construed.'"  *Dowling v. Am. Haw. Cruises, Inc.*, 971 F.2d 423, 425

26  (9th Cir. 1992) (quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)).  The Supreme Court has

27

28      [3] The court expresses no opinion regarding the admissibility of this document, only its discoverability.

**United States District Court**
For the Northern District of California

1  made it clear that an evidentiary privilege is not applied "unless it 'promotes sufficiently important

2  interests to outweigh the need for probative evidence. . . .'" *Univ. of Pa.*, 493 U.S. at 189 (quoting

3  *Trammel*, 445 U.S. at 51). "Inasmuch as '[t]estimonial exclusionary rules and privileges contravene

4  the fundamental principles that "the public . . . has a right to every man's evidence,'" any such

5  privilege must 'be strictly construed.'" *Id*. (quoting *Trammel*, 445 U.S. at 50) (internal citations

6  omitted). The party seeking an exception from this principle bears the burden of establishing the

7  existence of a privilege and its applicability to a particular case. *See In re Grand Jury Subpoenas*

8  *Dated Jan. 20, 1998*, 995 F. Supp. 332, 334 (E.D.N.Y. 1998). Further, the Supreme Court has

9  cautioned courts not to exercise the authority granted by Federal Rule of Evidence 501

10  "expansively," particularly where "it appears that Congress has considered the relevant competing

11  concerns but has not provided the privilege itself." *Univ. of Pa.*, 493 U.S. at 189.

12      There is no published Ninth Circuit authority supporting the existence of a union-employee

13  communications privilege. The Ninth Circuit recently expressed its opinion on this topic in an

14  unpublished opinion, *Kyei v. Oregon Department of Transportation*, 497 Fed.Appx. 711, 713 (9th

15  Cir. 2012). In that case, the court found that a district court's admission of testimony by two union

16  representatives did not constitute plain error. The court noted that "[n]either Supreme Court nor

17  Ninth Circuit precedent provide authority for a union member/union representative privilege. We

18  also choose not to 'continue the evolutionary development of testimonial privileges' by recognizing

19  a new privilege in this case." *Id*.

20      A number of district courts have considered the question and concluded that no privilege

21  protects union-employee communications relating to grievance proceedings, including two recent

22  cases in this district. In *Dang v. Sutter's Place, Inc.*, No. C 10-02181 RMW (PSG), 2012 WL

23  2906109, at *3 (N.D. Cal. Jul. 13, 2012), the court concluded that communications between a union

24  and the plaintiff, who had been represented by the union in a related grievance, were not privileged.

25  In another case, the court held that communications between a plaintiff, her attorney friend, and

26  union representatives were not privileged, citing *Dang* and noting that the plaintiff had cited no

27  authority to support the proposition that there is a privilege for union-employee communications.

28  *Fox v. Shinseki*, No. CV 11-04820 EDL, 2013 U.S. Dist. LEXIS 82087, at *14-15 (N.D. Cal. Jun.

United States District Court

For the Northern District of California

1    11, 2013). Other district courts in the Ninth Circuit have reached the same conclusion. *See Parra v.*

2    *Bashas' Inc.*, No. CIV 02-591-PHX RCB, 2003 WL 25781409, at \*4-5 (D. Ariz. Oct. 2, 2003); *see*

3    *also McCoy v. Sw. Airlines Co., Inc.*, 211 F.R.D. 381, 387-88 (C.D. Cal. 2002) (expressly refusing to

4    extend the attorney-client privilege to protect communications between pilots and their union

5    representatives made in preparation for grievance hearings; collecting cases).

6          Local One cites one district court decision to support its position, but the decision is

7    distinguishable. In *Black v. Potter*, No. C 08-01344 SI, 2010 WL 532408, at \*1-2 (N.D. Cal. Feb. 6,

8    2010), the court considered whether communications between a Plaintiff and a lay union

9    representative in connection with EEOC proceedings were privileged. The court concluded that

10   where there is statutory or regulatory authority for lay representation, a party could object to the

11   disclosure of communications relating to that representation where the communications were

12   intended to be kept confidential. 2010 WL 532408, at \*2. In so holding, the court noted that "in the

13   Court's view, protecting the confidentiality of communications between an aggrieved employee and

14   the union representative who is acting as the employee's advocate in EEOC proceedings furthers the

15   traditional rationales underlying the attorney-client privilege." *Id*. Local One urges the court to

16   adopt this reasoning here. However, the communications at issue in *Black* were in the context of an

17   EEOC proceeding; here, the communications involve a grievance procedure, and Local One has not

18   identified a comparable authorizing statute. *See McCoy*, 211 F.R.D. at 387 (refusing to find

19   communications with union representatives privileged under state law where no statute specifically

20   authorized representation by lay persons at grievance proceedings); *see also Am. Airlines, Inc. v.*

21   *Superior Court*, 114 Cal. App. 4th 881, 889-90 (2003) (refusing to recognize a union privilege under

22   California law; rejecting argument that California Labor Code section 923 implies such a privilege).

23         Local One also cites *Peterson v. State*, 280 P.3d 559, 564-65 (Alaska 2012), a recent

24   decision by the Alaska Supreme Court. In *Peterson*, the court found a "union-relations privilege"

25   implied in the state's Public Employment Relations Act (PERA). That statute recognizes the rights

26   of public employees to organize for the purpose of collective bargaining, and provides that public

27   employers may not interfere with the exercise of employees' rights. The court found that "the right

28   of the union and its members to function free of harassment and undue interference from the State"

6

1   is implicit in the statute. *Id*. at 565. Further, the statute provided that any attempt by the state to

2   force the disclosure of confidential communications between an employee and a union

3   representative during a grievance proceeding would constitute an unfair labor practice. The court

4   found that this protection should not be lost if the grievance dispute is not resolved and the employee

5   files a civil suit. *Id*. Therefore, the Alaska court's conclusion rests on that state's public

6   employment statute. Again, Local One has identified no similar statutory basis from which the court

7   may imply a union-employee communications privilege.[4]

8           As Local One has not identified authority for the recognition of a union-employee

9   communications privilege in this context, the court declines to recognize such a privilege in this

10  case.

11                          **3.      Right to Privacy**

12          Local One also argues that the documents at issue are protected from disclosure by its

13  constitutional rights of associational privacy protected under the First Amendment and the

14  California Constitution. While Local One is correct that a union may assert First Amendment rights,

15  it must demonstrate a "prima facie showing of arguable first amendment infringement." *Brock v.*

16  *Local 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 349-50 (9th Cir. 1988). In order

17  to make such a showing, Local One must demonstrate that the disclosure of the documents would

18  result in "(1) harassment, membership withdrawal, or discouragement of new members, or (2) other

19  consequences which objectively suggest an impact on, or 'chilling' of, the members' associational

20  rights." *Id.* at 350. A prima facie showing requires "objective and articulable facts, which go

21  beyond broad allegations or subjective fears." *Id*. at 350 n.1; *see also Dang*, 2012 WL 2906109, at

22  *3 (holding that declaration reflecting subjective beliefs about possibility of "chilling effect"

23  insufficient to make such a showing). Here, Local One has made no showing as to First Amendment

24  infringement. Therefore, the documents may not be protected from disclosure on this basis.

25

26          [4] Local One also cites *Cook Paint & Varnish Co.*, 258 NLRB 1230, at *1231-32, 1981 WL
27  21122, at *1231-32 (1981), in support of its position, but this case is not on point. In *Cook Paint*, the
    NLRB addressed whether threatening a union representative with discipline for refusing to submit to
28  an interrogation by the employer about conversations with a union employee constitutes an unfair labor
    practice.

**United States District Court**
For the Northern District of California

**II. Conclusion**

As the court concludes that the documents at issue are not protected by a union-employee communications privilege or Local One's rights to associational privacy, Plaintiff shall immediately produce to Defendant the documents at entries six, eight, nine, and eleven on her privilege log. Defendant may re-open Plaintiff's deposition for no more than one hour for the purpose of questioning her regarding these four documents.

IT IS SO ORDERED.

Dated:  August 28, 2013



IT IS SO ORDERED

Judge Donna M. Ryu

DONNA M. RYU
United States Magistrate Judge

United States District Court

For the Northern District of California