UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRI CURRY,

          Plaintiff,

    v.

CONTRA COSTA COUNTY,

          Defendant.

Case No.  12-cv-03940-WHO

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING MOTION RE EX PARTE CONTACTS**

Re: Dkt. Nos. 60, 64, 89, 93

      A judge's role in deciding summary judgment motions is not to weigh evidence; it is to discern whether there are triable issues of fact that must go to a jury. In this age discrimination and retaliation case, I must decide whether  Dr. Jerri Curry raises material questions of fact showing that defendant Contra Costa County relied on pretextual justifications for failing to hire her for open positions or use her for on-call work.  Because Curry's age and retirement issues were explicitly discussed in her interview for an open position, the County's explanations for not hiring and not continuing to offer her on-call work shifted over time and were not documented, and witnesses' perspectives on her abilities are in conflict, I find that Curry has raised material questions of fact as to some of the positions but not others.  Therefore, I GRANT in part and DENY in part the County's Motion for Summary Judgment.  The County also argues that Curry violated California Rule of Professional Conduct 2-100 in contacting non-managerial County employees to support her case.  I find that Curry and her counsel did not violate Rule 2-100 and DENY the County's Motion re Ex Parte Contacts.

## BACKGROUND

      From December 2003 through March 2010, plaintiff Dr. Jerri Curry worked as a part-time Mental Health Clinical Specialist (MHCS) in the County's "Detention Mental Health" unit.

United States District Court
Northern District of California

1  During this time, she worked primarily at the Martinez Detention Facility (MDF) with occasional

2  shifts at the West County Detention Facility (West County).  Curry has a doctorate in psychology,

3  is a licensed Marriage and Family Therapist (MFT), and is a certified Registered Addiction

4  Specialist (RAS).  Declaration of Dr. Jerri Curry ¶ 2.  She is 70.  *Id.*

5  In March 2010, Curry became a full-time MHCS at the Concord Adult Mental Health

6  Clinic (CAMHC), where Curry continues to work.  John Allen selected Curry for that position,

7  after receiving a qualified recommendation from Candace Kunz-Tao, who was plaintiff's co-

8  worker in the Detention Mental Health unit.  Declaration of Candace Kunz-Tao ¶ 4.  After March

9  2010, Curry continued to work on an "on call" basis in the Detention Mental Health unit.

10  In July 2010, Kunz-Tao became the supervisor of the Detention Mental Health unit.  Kunz-

11  Tao asserts that she received "a number" of complaints from co-workers in the Detention Mental

12  Health unit about Curry's work both before and after she took over as supervisor.  None of these

13  complaints was documented.  The only specific co-worker identified by Kunz-Tao is Morgan

14  Knowles, who reported to Kunz-Tao (at some unspecified point) that Curry "frequently" left her

15  shift early and without discussing the status of inmates and their counseling needs.  Kunz-Tao

16  Decl. ¶ 5.  Kunz-Tao believes this conduct was a serious breach of unit protocol.  *Id.*  Curry

17  disputes this allegation, and alleges that Kunz-Tao has told her "You are the most dependable

18  member of the staff; I can always count on you to show up."  Curry Decl. ¶ 33.

19  Kunz-Tao also discusses an incident, reported by an unnamed co-worker, where Curry

20  allegedly left her shift without noting in the computer system that an inmate was in a safety cell

21  and that once a Sheriff's department employee could not locate Curry "for a considerable" period

22  of time; asserting again that these incidents were "serious" and caused Kunz-Tao to "have

23  concerns about Ms. Curry's professional judgment and trustworthiness."  Kunz-Tao Decl. ¶ 5.

24  Curry contends that "she never heard any complaints about her performance" from Kunz-Tao or

25  anyone else.  Curry Decl. ¶ 13.  Ms. Curry also notes that on May 25, 2011, Kunz-Tao expressed

26  her hope that Curry would continue to work on-call shifts at MDF.  *Id.* ¶ 21, Ex.4.

27  Starting in May 2011, when plaintiff was 68 years old, plaintiff applied for multiple

28  MHCS job vacancies at MDF or West County, but was not given any of the positions she applied

1   for.  Pl. Oppo. at 1.  In May 2011, Curry applied for two full-time MHCS positions and

2   "requested" to be considered for a third part-time position in the Detention Mental Health unit.

3   Curry Decl. ¶ 14.  Kunz-Tao had a "pre-interview" telephone discussion with Curry.  *Id*. ¶ 16.

4   Curry alleges that during the phone call she told Kunz-Tao her age, and assumed (but could not

5   recall) that she did so in response to a question by Kunz-Tao.  *Id*.  On May 9, 2011, Curry had an

6   in-person interview with Kunz-Tao.  Curry alleges that in that interview Kunz-Tao did not ask

7   Curry about her references, qualifications, or interest in the positions and did not discuss

8   "teamwork" or "cohesiveness" or how Curry would fit into the unit.  *Id*.  Instead, according to

9   Curry, Kunz-Tao spent 20 minutes discussing "retirement issues," and made statements regarding

10  how many staff were leaving the unit and retiring, how that would be difficult, and how Kunz-Tao

11  had not realized that Curry had worked at the jail as long as the others who were getting ready to

12  retire.  *Id*. ¶ 17.

13          Kunz-Tao admits discussing retirement issues during the interview, but contends the

14  purpose was to probe Curry's willingness and ability to work as a team player during the transition

15  from the current to the new team.  Kunz-Tao Decl. ¶ 9.  Curry contends that Curry's age was

16  "clearly" on Kunz-Tao's mind and believed, based on the contents of the interview, that Kunz-Tao

17  was not considering Curry as a viable candidate for the positions because of her age.  Curry Decl.

18  ¶ 17.

19          Margaret Robbins was eventually selected for the first full-time position.  Kunz-Tao based

20  her selection on Robbins' experience, better "fit," and the opinion of Michael Elder (who was a

21  Team Leader in the unit) that other employees would quit if Curry was selected.  Kunz-Tao Decl.

22  ¶¶ 12-14.  Robbins was 48 at that time.  Curry Decl. ¶ 20.  Robbins had recently graduated from

23  college and her only detention experience at that point was working as a temporary employee at

24  MDF.  *Id*. ¶ 20.

25          For the second full-time position, Kunz-Tao selected Rebecca Bertram based on several

26  factors including her experience and skills in Art Therapy, her better "fit,"  Elder's comments, and

27  a recommendation of Bertram by Kunz-Tao's own supervisor, Julie Kelley.  Kunz-Tao Decl. ¶ 18.

28  Bertram was 42 at the time.  Curry Decl. ¶ 18.  Curry contends that Bertram had only worked for

United States District Court
Northern District of California

1   the County for six months at that time, and lasted only a few months in the full-time jail position

2   before leaving to work for the State of California.  *Id*. ¶ 19.

3          For the third, part-time position, Margaret Knowles was selected.  Knowles was in her 20s

4   at that time.  Curry Decl. ¶ 18.  Curry contends that neither Bertram nor Knowles were qualified to

5   do the job because they did not have professional licenses to conduct "one of the most essential

6   duties of the positions" to assess and complete a 5150 to transfer inmates from jail to the county

7   hospital.  *Id*. ¶ 20.

8          On May 25, Curry emailed Kunz-Tao questioning why less experienced individuals were

9   hired and informing Kunz-Tao that she would contact her union to "determine my rights."  *Id*. ¶¶

10  21, 23.  On May 27, 2011, Curry's counsel wrote a letter to the County claiming age

11  discrimination by Kunz-Tao against Curry.  Curry Decl. ¶ 24.  On the same date, Curry formally

12  complained to the County through her union about age discrimination.  *Id*. ¶ 26.

13         Curry alleges that during "the last week of May 2011" after the County was notified of her

14  complaint of discrimination, Kunz-Tao began discriminating against Curry by having other staff

15  fill on-call positions, even though Curry normally filled on-call slots two to three times a month on

16  average.  Curry Decl. ¶¶ 25, 29.  The last on-call shift Curry filled was a June 4 slot that had been

17  assigned in early May.  *Id*. ¶ 25.  Kunz-Tao asserts that she received complaints about how Curry

18  counseled an inmate during her last on-call shift on June 4th.  Kunz-Tao Decl. ¶ 21. Curry states

19  that Kunz-Tao never discussed the complaint with her and did not write up any report of the

20  complaint/incident.  Curry Decl. ¶ 32.

21         Kunz-Tao does not admit when she learned of Curry's allegation of age discrimination.

22  Kunz-Tao declares that in May 2011, the County implemented a new schedule that reduced the

23  number of on-call shifts in the Detention Mental Health Unit.  Kunz-Tao Decl. ¶ 20; *see also*

24  Declaration of Sheila R. Reid, Ex. 6 at pg.6 (County response to EEOC charge).  However, Curry

25  asserts that on May 30, 2011, Kunz-Tao gave two other employees on-call slots in June.  Curry

26  Decl. ¶ 29.  Curry also contends that at least one other employee continued to receive on-call shifts

27  in July and August. *Id*.

28         On June 9, 2011, Curry filed a discrimination charge with the Equal Employment

4

Opportunity Commission (EEOC) and the California Department of Fair Employment and Housing (DFEH). Curry Decl. ¶ 27. On June 21, 2011, Curry's union faxed Kunz-Tao a letter informing her that Curry filed a grievance on the ground that she was discriminated against with respect to the positions she applied for. *Id*. ¶ 28.

On June 24, 2011, the County alleges that Curry gave a "tour" of MDF to two unauthorized visitors. The County asserts this was in violation of Sheriff Department policy. Kunz-Tao Decl. ¶ 22; Declaration of Michael F. Elder ¶ 7. Curry contends that she was asked by her supervisor, Guillermo Cuadra, to take two new CAMHC employees to tour the MDF. Curry Decl. ¶ 30. Curry asserts that during her prior eight years working at the MDF, she never had to obtain advance clearance to take others to the jail. *Id*. During the visit, which included a visit with Kunz-Tao at the Mental Health unit, Curry was never advised that she was violating protocol. *Id*.

On June 28, 2011, Kunz-Tao informed Curry that she had violated protocol by not obtaining clearance for the two visitors. Kunz-Tao also informed Curry that her jail clearance was revoked because it had expired. Curry Decl. ¶ 31, Ex. 8-1. Kunz-Tao's email did not inform Curry that she would no longer be working in the jail, nor did it inform Curry that the unapproved June 24 jail visit was serious. It simply told Curry to contact Ernesto Lara if she had questions. *Id*., Ex. 8-1. Curry alleges these reasons were pretext, to allow Kunz-Tao to revoke Curry's security clearance. Curry Decl. ¶ 31. Prior to that time, when her security clearance expired, Curry alleges she would have simply received a new badge and clearance. When Curry inquired with the Custody Services Bureau as to why her clearance was not renewed in June 2011, Curry was informed it was because Kunz-Tao informed the Bureau that Curry was no longer working at the jail. *Id*.

As a result of the loss of her jail clearance, Curry alleges that she cannot fully perform her job and duties as a member of the Forensic Multidisciplinary Team. Curry Decl. ¶ 34. She also alleges that she has lost income due to the termination of her on-call work. *Id*.

On August 27, 2011, Curry filed additional charges with the EEOC alleging retaliation as a result of her age discrimination complaints. Curry Decl. ¶ 35. Curry asserts that since that filing,

Kunz-Tao has refused to consider Curry for any available MHCS position at the jail or under her supervision in retaliation.  *Id.*

In the Fall of 2011, there was another open MHCS position in the Detention Mental Health unit.  Curry applied for the position, as did David Ezra (who had held the position earlier in the year).  Curry Decl. ¶ 36.  The County contends that Ezra was a Detention Mental Health Unit member considering retirement in the new future.  Kunz-Tao selected Ezra over Curry for the position for several reasons, including his training skills, a better "fit" and Elder's comments.  Kunz-Tao Decl. ¶ 24.  Curry asserts she was the more qualified person for the position because she had a forensic background and a Ph.D., while Ezra did not.  *Id.* ¶ 36.

Later in 2011, Curry says she was approached by Barbara Shafer who wanted to transfer from her position at West County to CAMHC where Curry worked, and the two discussed the possibility of a job exchange.  Shafer told Curry that the exchange suggestion came from a senior member of the MDF Mental Health team, Dr. Sigmund Moskovitz, and that the County Disability Coordinator, Susan Skamser, was also involved in the potential exchange.  Curry Decl. ¶ 37.  Curry emailed Kunz-Tao and others advising them of her interest in the exchange.  *Id.*  Within a few days, Shafer was transferred to CAMHC, but Curry was not allowed to transfer to West County.  Curry contends that this was the result of retaliation by Kunz-Tao. *Id.*  The County contends that the decision to deny the exchange was not made by Kunz-Tao, but by her supervisor, Julie Kelley, who was the one that responded to Curry's email and informed Curry that the County does not allow position exchanges.  Supplemental Declaration of D. Cameron Baker [Docket No. 110], Ex Q. (Ex. to Deposition of Juliette Kelley).

In February 2012, Curry applied for a full-time position (#7956) at MDF, after Bertram left the position.  Curry Decl. ¶ 39.  When she first applied for the position in May 2011 it was not flagged as "Spanish-speaking," but now it was.  *Id.*  Curry inquired with Kunz-Tao and asked that if there were flexibility in the designation, Curry would like to be interviewed for the position.  *Id.*  Curry was not interviewed and the position was filled by Margaret Pena, who Curry contends was in her 40s, non-licensed and "much less qualified" than Curry.  *Id.*  The County contends that Pena is certified as Spanish-speaking and Curry is not.  Kunz-Tao Decl. ¶ 26.

United States District Court
Northern District of California

United States District Court
Northern District of California

In April or May 2012, Curry applied for a MHCS position at the Behavior Health Court (BHC), which is also a unit under the supervision of Kunz-Tao.  Curry Decl. ¶ 40.  Curry was interviewed by Martha Wilson and Victoria Brown, who believed Curry interviewed poorly. Wilson Decl. ¶ 5.  Curry was informed by Kunz-Tao on June 7, 2012 that she "was not selected because we are particular about finding the right fit" and that the County decided to interview more applicants.  Curry Decl. ¶ 40.

On September 24, 2012, two additional MHCS positions were posted.  When Curry inquired with Kunz-Tao about the positions, she was informed that there was only one position open and it was for a Spanish-speaking candidate only.  Curry Decl. ¶ 41.

Curry contends that the failure of the County to hire her into the open positions, the County's failure to allow her to exchange positions, and the elimination of Curry's on-call work was the result of age discrimination and, for decisions taken after May 2011, in retaliation for Curry's complaint of age discrimination.  The County moves for summary judgment, arguing that Curry has failed to establish a prima facie case of discrimination or retaliation, failed to show the County's legitimate nondiscriminatory reasons were pretext, and failed to exhaust some of her claims.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the court "that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate specific facts showing a genuine issue for trial."  *Id*. at 324 (quotation marks omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  T.*W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment."  *Id*.  However, conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp*., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I.  EVIDENTIARY ISSUES AND MOTION RE EX PARTE CONTACTS

Curry and the County raise evidentiary objections to key portions of the other's evidence on the motion for summary judgment.  In addition, the County seeks an order requiring plaintiff's counsel to: (i) identify all communications between her counsel and employees of defendant (other than Curry); (ii) produce all documents regarding such contacts and communications; (iii) destroy all such documents; and (iv) exclude all such evidence obtained by means of such communications, including the declarations of Barbara Shafer, Marina Becerra, and Sigmund Moskovitz submitted by Curry in support of her opposition to the County's Motion for Summary Judgment.  Docket No. 93.  The County argues that the contacts with Shafer, Becerra, Moskovitz, Dr. Douglas Quinn and any other County employee violated California Rule of Processional Conduct 2-100.

### A. Motion re Contacts with County Employees

Turning first to the County's Motion re Ex Parte Contacts, the County asserts that plaintiff's and plaintiff's counsel's contacts with any County employee violated California Rule of Professional Conduct 2-100 and, as a result, this Court should not consider the declarations of Barbara Shafer, Sigmund Moskovitz and Marina Becerra submitted in support of Curry's opposition to the Motion for Summary Judgment.

California Rule of Professional Conduct 2-100 provides:

(A)  While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.

(B)  For purposes of this rule, a "party" includes:
(1)  An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or
(2)  An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

(C)  This rule shall not prohibit:
(1)  Communications with a public officer, board, committee, or body; or
(2)  Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or
(3)  Communications otherwise authorized by law.

The County does not argue that any of the County employees contacted by plaintiff (Shafer, Becerra, Moskovitz, or Quinn) were officers, directors or managing agents of the County. Nor do they submit evidence that these parties were specially represented by County counsel with respect to the litigation at issue.[1] Instead, the County relies on two Eastern District of California cases to argue that because the employees' comments to plaintiff's counsel could constitute

---

[1]  The County simply asserts that it considers the employees at issue to be "represented." Relatedly, the County argues that Curry "knew" the County "took the position that Plaintiff and counsel should contact county employees only through counsel" because the County's initial and supplemental disclosures listed County Counsel Cameron Baker as the contact for county employees the County believed were likely to have discoverable information.  Reply Br. In Support of Motion [Docket No. 114] at 4-5.   However, none of the employees at issue on this motion were included by the County on their initial disclosures as employees who were likely to have discoverable information.  Moreover, the County has not argued or shown how these employees were specially represented by County Counsel on this matter.

hearsay "admissions" on behalf of the County under Federal Rule of Evidence 801(d)(2)(D), they cannot and should not have been contacted under 2-100(b)(2).  In *United States v. Sierra Pac. Indus.*, 857 F. Supp. 2d 975, 980-981 (E.D. Cal. 2011), the district court held that defendant's expert was prohibited by Rule 2-100 from contacting any Forest Service employee because, under Federal Rule of Evidence 801(d)(2), any statement by a Forest Service employee about a matter within the scope of their job could constitute an "admission" binding on the federal government. Therefore, applying federal evidence law (and rejecting the California Court of Appeal's own interpretation of Rule 2-100), the Court held that the expert violated Rule 2-100 in contacting Forest Service employees as part of his investigation on behalf of the defendant.  *See also Guthrey v. Cal. Dep't of Corr. & Rehab.*, 2012 U.S. Dist. LEXIS 110862, * 17 (E.D. Cal. Aug. 7, 2012) (following *Sierra Pacific Industries* and concluding that since all California Department of Correction employees statements could "be imputed to CDCR in a manner creating civil liability" and "in conjunction with the Federal Rules of Evidence, such an employee is a represented party" no CDC employee should have been contacted by plaintiff or plaintiff's counsel).

As an initial matter, I note that courts in the Northern and Southern Districts have applied California law, not the Federal Rules of Evidence, in determining whether Rule 2-100 has been violated.  *See, e.g Hoyt v. Career Sys. Dev. Corp.*, 2010 U.S. Dist. LEXIS 66957, * 4 (S.D. Cal. June 30, 2010); *HTC Corp. v. Tech. Props. Ltd.*, 715 F. Supp. 2d 968, 973 (N.D. Cal. 2010); *Krzyzanowski v. Orkin Exterminating Co.*, Case No: C 07-05362 SBA, 2009 U.S. Dist. LEXIS 113200, * 8 (N.D. Cal. Nov. 19, 2009)  Moreover, I decline to follow the analysis of *Sierra Pacific Industries* for a number of reasons.  First, the *Sierra Pacific Industries* Court appears to have conflated an exception to the hearsay rule which allows statements of a party's employee to be *admissible* as long as they were made within the scope of their employment (*see* Fed. Rule of Evid. 801(d)(2)) with admissions "on the part of the organization" that are *binding* as a matter of fact or law on a party.  *See* Rule 2-100(B)(2); *see also Triple A Machine Shop, Inc. v. State of California*, 213 Cal. App. 3d 131, 140 (Cal. App. 1989) ("Thus, rule 2-100 permits opposing counsel to initiate ex parte contacts with unrepresented former employees, and present employees (other than officers, directors or managing agents) who are not separately represented, so long as

10

the communication does not involve the employee's act or failure to act in connection with the matter which may bind the corporation, be imputed to it, or constitute an admission of the corporation for purposes of establishing liability.").

Second, the *Sierra Pacific Industries*' holding – barring a party or their counsel from contacting *any* employee of an opposing party to discuss a topic relevant to the litigation and that could fall within the hearsay exception – would swallow Rule 2-100's narrow limitations.  Rule 2-100 only prohibits contact of employees who *are* "officers, directors, or managing agents" of an opposing party or those employees who can bind the party "for purpose of civil or criminal liability" or whose statements would constitute an "admission on the part of the organization." The wide application of Rule 2-100 proposed by the County would make all employees who were not specifically represented by counsel and who had knowledge of an event relevant to any incident uncontactable and would render 2-100(B)(1) an effective nullity.

Because the County has not established that any of the employees plaintiff or her counsel contacted during their investigation of Curry's case had information that could meet the narrow standard of binding the County or constitute an admission by the County "for purposes of establishing liability," the contacts were not prohibited by Rule 2-100.  *See Triple A Machine Shop, Inc*., 213 Cal. App. 3d at 140.

**B. Plaintiff's Motion for Sanctions**

In her opposition to the County's Motion re Ex Parte Contacts, Curry moves for sanctions, specifically to recover the costs she incurred in opposing the County's motion.  *See* Docket No. 111 at 7-8.  Curry seeks sanctions under 28 U.S.C. § 1927,[2] arguing that there was no reason why the County waited until summary judgment briefing to bring its motion, because Curry's intention to rely on the testimony of at least two of the employees at issue (Shafer and Moskovitz) was disclosed in her initial disclosures over a year ago, yet the County waited until Curry served her amended disclosures in March 2014 to raise the issue.  Curry also asserts that the current motion is

---

[2] 28 USC § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

1    baseless and intended only to harass and increase plaintiff's litigation costs.  Finally, Curry points

2    to the County's prior (now withdrawn) motion for sanctions related to an email Curry did not

3    produce (until she conducted a further search and located it), as demonstrating the County's

4    pattern of vexatious litigation.

5         I DENY Curry's request for sanctions.  As to the County's now-withdrawn motion for

6    sanctions, I do not find it was vexatious or frivolous – although it now appears that it was

7    unnecessary, as plaintiff was able to locate and produce the email the County was seeking.  With

8    respect to the County's current motion, I find that the County had a reasonable basis for bringing

9    the motion, although I ultimately disagree with the case law the County relies on in its motion.

10   **C.  Other Evidentiary Objections**

11        **1.  County's Objections**

12        The County objects to statements in paragraph 16 of Curry's declaration regarding Curry's

13   recollection of her phone pre-interview with Kunz-Tao as inadmissible conjecture and speculation.

14   Objection is OVERRULED.  The County objects to statements in paragraph 17 of Curry's

15   declaration describing her belief that Kunz-Tao discriminated against her based on Curry's age as

16   inadmissible conjecture and speculation.  Objection is OVERRULED.  The County objects to

17   statements made in paragraph 19 of Curry's declaration regarding Bertram as inadmissible hearsay

18   and not based on personal knowledge.  The objection based on lack of personal knowledge is

19   OVERRULED and the objection based on hearsay is OVERRULED under Fed. R. Evid.

20   801(d)(2).  Finally, the County objects to statements in paragraph 28 of Curry's declaration

21   regarding Curry's June 11, 2011 union letter under the best evidence rule.  Objection is

22   OVERRULED.

23        **2.  Curry's Objections**

24        Curry objects to the County's evidence that Curry was not a "good fit."  Oppo. Br. at 13.

25   This objection does not identify the specific testimony Curry objects and it is OVERRULED.

26        Curry objects to statements in paragraphs 13 and 14 of the Kunz-Tao Declaration as

27   conclusory, speculative, lacking foundation, hearsay, and prejudicial.  Objections are

28   OVERRULED.  Curry also object to statements in paragraphs 17, 18 and 24 of the Kunz-Tao

United States District Court
Northern District of California

12

Declaration as conclusory, lacking foundation, hearsay, and contradicted.  Objections are OVERRULED.

Curry objects to statements in paragraphs 4-7 of the Elder Declaration as conclusory, lacking foundation, hearsay, prejudicial, and inadmissible opinion.  Objections are OVERRULED.

Curry objects to statements in the declaration of Margaret Robbins on the basis of relevance.  Objections are OVERRULED.

Curry objects to statements in the declaration of Rebecca Bertram on the basis of relevance and inadmissible character evidence.  Objections are OVERRULED.

Curry objects to statements in the declaration of Morgan Knowles on the basis of relevance and prejudice.  Objections are OVERRULED.

Curry objects to statements in the declaration of Martha P. Wilson on the basis of relevance, conclusory, lacking foundation, and speculative.  Objections are OVERRULED.  Curry also objects to the statements in paragraph 6 about Curry's comment based on hearsay and prejudice.  Objections are OVERRULED.

Finally, Curry objects to statements in the declaration of Chris Vannoy as lacking foundation, conclusory and prejudice.  Objections are OVERRULED.

## II.  AGE DISCRIMINATION AND RETALIATION CLAIMS

To prevail on her age discrimination claim under the federal Age Discrimination in Employment Act (ADEA), "plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action."  *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012).  Under California's Fair Employment and Housing Act (FEHA), plaintiff must prove that age discrimination was "a substantial factor motivating the adverse employment action."  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 225 (2013).

Under both her ADEA and FEHA age discrimination claims, at the summary judgment stage Curry must make a prima facie case of age discrimination.  Here, she must show that she was (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the position was given to a substantially younger person.  *Shelley v. Geren*, 666 F.3d at 608.  The person hired instead of the complaining applicant

13

United States District Court
Northern District of California

need only be "substantially younger" but need not be under 40.  *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (noting age discrimination can be shown where a "56-year-old is replaced by a 40-year-old.").

Similarly, "[u]nder Title VII, a plaintiff may establish a prima facie case of retaliation by showing that (1) she engaged in activity protected under Title VII, (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506  (9th Cir. 2000).

If Curry demonstrates a prima facie case, the burden shifts to the County to articulate a legitimate, non-discriminatory reason for the adverse employment action.

If the County presents a legitimate, non-discriminatory reason, the burden shifts back to plaintiff to "demonstrate that there is a material genuine issue of fact as to whether the employer's purported reason is pretext for age discrimination." *Shelley v. Geren*, 666 F.3d at 608 (applying the *McDonnell Douglas* burden-shifting framework); *see also Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013) (applying *McDonnell Douglas* framework to FEHA claim on summary judgment); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (adopting the same for retaliation claim under Title VII).  Pretext can be shown "'(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.' . . .  All of the evidence—whether direct or indirect—is to be considered cumulatively." *Shelley v. Geren*, 666 F.3d at 609 (quoting *Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir.  2000)).

Direct evidence is evidence which, if believed, proves the fact discrimination without inference or presumption.  *Stegall*, 350 F.3d at 1066.  When direct evidence is offered "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998).  Where only circumstantial evidence is offered to show "that the employer's motives were different from its stated motives, we require 'specific' and 'substantial' evidence of pretext to survive summary judgment." *Stegall*,

350 F.3d at 1066.

As noted above, Curry contends that she suffered the following adverse employment actions as a result of discrimination or retaliation:  (i) she was not hired for three open positions in May 2011; (ii) after complaining about age discrimination, she was denied on-call work; (iii) after complaining about discrimination, her jail clearance was revoked and not renewed; (iv) she was not hired for the open MHCS position in Fall 2011; (v) she was denied the opportunity to exchange with Shafer to West County in November 2011; (vi) she was not hired in the open MHCS position in February 2012; (vii) she was not hired for the MHCS position at the BCH; and (viii) she was not allowed to apply for either of the two open positions in Fall 2012.  I will address each in turn.

### A.  May 2011 Positions

Curry claims that Kunz-Tao discriminated against her on the basis of her age when the County failed to hire Curry into the two-full time or the one part-time MDF positions in May 2011.

### 1.      Part-Time Position That Went to Morgan Knowles

As an initial matter, Curry does not claim that she formally applied for the part-time position given to Knowles.  In her declaration, Curry only states that she "requested that I be considered for the third, part-time position."  Curry Decl. ¶ 14.  The County's evidence is that Curry did not apply for the position and only expressed her interest on May 25, 2011, after the County had hired Margaret Knowles for the position.  Kunz-Tao Decl. ¶ 6.  Curry does not explain when she first expressed interest in the position, much less provide evidence showing that the County would consider hiring someone who did not formally apply, but only requested consideration for an open position.  Similarly, Curry does not provide evidence to suggest that the County took any adverse action against Curry with respect to the part-time position (*e.g.*, that they interviewed or hired others who likewise did not formally apply, but only requested consideration).

As such, Curry has failed to demonstrate a prime facie case of age discrimination with respect to the part-time position and the County's Motion for Summary Judgment is GRANTED

United States District Court
Northern District of California

1   as to this claim.

2       2.      **Full-time MDF Position (#8910) That Went to Margaret Robbins**

3           With respect to the full-time MDF position (#8910) that went to Margaret Robbins, the

4   County argues that Curry cannot establish a prima facie case of discrimination because Curry was

5   not "qualified" for the position because she was not performing her job in a satisfactory manner.

6   Motion at 11.  The County relies on the following to support its argument: Julie Kelley (Curry's

7   supervisor from 2009 – 2011) testified that there were "problems" with Curry's work on her shifts

8   and Kunz-Tao received "a number" of complaints about Curry, including that Curry left early and

9   once did not communicate about an inmate in a safety cell.  Motion at 12.

10          These complaints are non-specific (vague "problems" or "a number of complaints") and

11  have no timeframe associated with them.  Moreover, as Curry points out, there is no evidence that

12  the County documented the problems/complaints at the time they arose, or discussed the concerns

13  with Curry.  These problems and complaints are not reflected in any of Curry's performance

14  evaluations, which generally found Curry's work to be "above standard" during the relevant time.[3]

15  Moreover, Curry provides her own evidence – from co-workers at the jail and from CAMHC –

16  that Curry did not leave early and that Curry more than adequately performed her job duties at

17  MDF, West County and CAMHC.  *See, e.g*., Declaration of Margaret Blush [Docket No. 106] (co-

18  worker at MDF from 2003 through 2007); Declaration of Barbara Shafer [Docket No. 104] ¶¶ 2,

19  11 (co-worker from 2007 through 2011 at West County who never heard any negative comments

20  about Curry's work performance from co-workers or jail staff, and co-worker at CAMHC for six

21  months in 2011-2012 where "everyone loved working with" Curry); Declaration of Dr. Sigmund

22  Moskovitz [Docket No. 105] (attaching a letter of recommendation he wrote for Curry in 2008,

23

24  [3]  The performance appraisal from 2010-11 submitted by Curry shows her "competency
    assessment" as "above standard" for all of the categories.   Curry Decl, Ex. 3.  Her 2004-05
25  appraisal shows marks at "above standard" and "exceptional."  Amended Baker Decl. [Docket No.
    91], Ex. B.  Her 2005-06 performance appraisal shows "meets standard" marks with suggested
26  improvements in communicating with peers, supervisors and custodial.  *Id*., Ex. C.  Her 2007-08
    appraisal shows marks as exceptional and above standard, but only "meets standard" in human
27  interaction, with a note that she could sometimes be abrupt and harsh and that she needs to "be
    aware" of her communication skills.  *Id*., Ex. D.  A "meets standard" mark shows "satisfactory
28  performance" and a "below standard mark" which Curry did not receive, requires "immediate
    improvement."

United States District Court
Northern District of California

1    expressing high quality of her work and standards a MDF).[4]  Finally, in her May 25, 2011 email to

2    Curry informing Curry that she was not selected for the open positions, Kunz-Tao did not raise

3    any concerns with Curry's work, but instead expressed her hope that Curry would continue to

4    work on-call for MDF despite the fact that she was not hired for the permanent position.  Curry

5    Decl., Ex 4.  This contemporaneous statement calls into question Kunz-Tao's *later* identification

6    of "serious" problems with Curry's work and professional judgment.  *But see* Kunz-Tao Decl. ¶ 5.

7         Taking all inferences from the undisputed and disputed evidence in favor of Curry, I find

8    that Curry has raised a material issue of fact as to whether she was "qualified" for the open

9    position and was adequately performing her job during her on-call shifts.

10        Curry does not really dispute that the County has provided non-discriminatory reasons for

11   not hiring Curry: the County asserts that Curry was not hired for this position because she was not

12   a good fit, because of Kunz-Tao's own "concerns" about Curry, and because Kunz-Tao had been

13   informed by Michael Elder that other MHCS employees at the jail would quit if Curry was hired

14   full-time.  Kunz-Tao also asserts that Margaret Robbins was hired instead based on her better fit,

15   recommendations, and "superior qualifications."   Curry challenges these reasons as being

16   pretextual for age discrimination.

17        Curry argues that she has both direct and circumstantial evidence of age discrimination.  In

18   the pre-interview phone call with Kunz-Tao, Curry told Kunz-Tao her age which Curry believes

19   was in response to a question posed by Kunz-Tao.  Curry Decl. ¶ 16.  Kunz-Tao does not claim

20   that Curry's age was *not* mentioned, but instead testifies that "to the best of her recollection" she

21   has never asked Curry her age.  Kunz-Tao Decl. ¶ 8.[5]  Moreover, the parties agree that the

22   _____

23   [4]  The County questions the value of the Moskovitz and Shafer declarations and testimony,
     because neither of those individuals – who both worked at West County – saw or could comment

24   on Curry's performance at MDF.  Reply at 11, n. 5 (citing *Bennett v. City & County of San
     Francisco*, 2014 U.S. Dist. LEXIS 4651, *21-22 (N.D. Cal. Jan. 13, 2014)).  However, Moskovitz

25   and Shafer (unlike the declarant discounted by the Court in *Bennett*) explained the basis for their
     comments; namely that they worked with Curry in the jail setting, albeit at West County and not at

26   MDF.  The County does not explain how that distinction (West County vs. MDF) is significant or
     otherwise support its position that the Moskovitz and Shafer testimony should be discounted.

27   [5]  The County also relies heavily on contemporaneous notes Curry made and sent on June 20,
     2011 to her union, where Curry admits she could not recall what was said that led to the disclosure

28   of her age, but she "believed" Kunz-Tao asked her.  Amended Baker Decl. [Docket No. 91], Ex.
     E.  Contrary to the County's position, Curry's contemporaneous notes do not undermine the

1    retirements of various MDF employees were discussed during Curry's May 9, 2011 interview.

2    While Curry and Kunz-Tao have different explanations as to why that topic was discussed in such

3    depth – and Curry alleges that Kunz-Tao also commented that she didn't realize that Curry had

4    been working at the jail "as long as the others who are getting ready to retire" Curry Decl. ¶ 17 –

5    the fact that retirements were discussed in such depth is significant and substantial evidence that

6    age may have been on Kunz-Tao's mind, sufficient to create an issue of material fact as to pretext.

7    *See, e.g., Shelley v. Geren*, 666 F.3d at 610 (where decision-makers "sought out the retirement

8    dates at the time of their participation in the hiring process for the temporary and permanent

9    positions shows more than that the decision-makers may have known of the candidates' ages. It

10   raises an inference that they considered this information relevant to their decisions.").[6]

11          Further, in combination with this evidence, Curry's uncontradicted testimony is that her

12   experience and interest in the open MHCS position were not discussed in the May 9th interview

13   and that Kunz-Tao made a comment that it would be hard to fill the two to midnight shift, the job

14   Curry applied for.  This additional comment, when taken into consideration along with the

15   discussion of the retirement of workers who had been at the jail "as long as" Curry had, and

16   viewed in the light most favorable to Curry, is substantial and significant evidence that age was on

17   Kunz-Tao's mind and that Kunz-Tao was not seriously considering Curry for the open position.

18          The County argues that the "same actor" inference applies here and negates any inference

19   of age discrimination in 2011 because Kunz-Tao gave a qualified recommendation of Curry for

20   the position at CAMHC in 2010.  Motion at 17-18.  As explained in the Ninth Circuit, "where the

21   same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both

22   _____

23   current position that "she believes" that Kunz-Tao asked her about her age.
     [6]  The County argues that I should not rely on the portion of the Ninth Circuit's decision in *Shelley*

24   where the Court concluded that a discussion of retirement data was "direct" evidence of age
     discrimination because that conclusion contradicts prior Ninth Circuit cases holding that direct

25   evidence of discrimination should be able to stand alone, "without inference or presumption," to
     demonstrate discrimination was cause or part of the determination.  Motion at 11, n 4.  *See, e.g.,*

26   *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005) (distinguishing between
     direct evidence which "typically consists of clearly sexist, racist, or similarly discriminatory

27   statements or actions by the employer," and indirect evidence which "requires an additional
     inferential step to demonstrate discrimination.").  Whether or not Kunz-Tao's statements about age

28   and retirement are direct or indirect evidence, they are part of "substantial" and "significant"
     showing of pretext made by Curry to survive summary judgment.

actions occur within a short period of time, a strong inference arises that there was no discriminatory motive." *Bradley v. Harcourt, Brace & Co*., 104 F.3d 267, 270-71 (9th Cir. 1996). The inference is a "strong" one that courts must take into account on summary judgment. *Coghlan*, 413 F.3d at 1098.  The inference applies to favorable employment actions other than hiring, such as promotion, and may arise when the favorable action and termination are as much as a few years apart.  *Schechner v. KPIX-TV & CBS Broad., Inc*., 686 F.3d 1018 (9th Cir. 2012). However, Kunz-Tao was not the decision-maker for the CAMHC position, even though she gave Curry a qualified recommendation for the job.  Moreover, here a negative inference (that Kunz-Tao was interested in having Curry transfer out of her unit and into another job) could be supported as easily as a positive inference.  Therefore, I do not find that the same actor inference applies to negate Curry's substantial and significant evidence of age discrimination.

The County also argues that it hired Robbins over Curry because of Robbins' "superior" qualifications, Kunz-Tao's own experiences with the applicants (including her concerns respecting Curry's ability to get along with others, her desire to work at MDF, and her trustworthiness), and Michael Elder's comments about Curry (that Curry was not a "good fit," that "others" in the unit might quit of Curry was hired, and "inappropriate actions" by Curry) and positive comments about Robbins.  Kunz-Tao Decl. ¶¶ 11-14.  These justifications are largely consistent with the explanations provided by the County to the EEOC.  Reid Decl., Ex 6 at pgs, 14-15.

With respect to Kunz-Tao's concerns about Curry's quality of work, trustworthiness, and ability to work with others,  those "complaints" were not discussed with Curry, were not contemporaneously noted (other than a need to improve communication and that Curry can be perceived sometimes as "harsh" in 2007-08), and are unspecific (i.e., other than Knowles, no complaining co-workers are identified by name and no timeframe given for when the complaints arose).  Moreover, at least as of May 25, 2011, Kunz-Tao was expressing her hope that Curry would continue to work for her.  That calls into question Kunz-Tao's current position that Curry's work quality and trustworthiness were already a concern on May 25, 2011.

With respect to Elder's comments – relied on by the decision-maker Kunz-Tao – I note that they too are mostly unspecific.  Mr. Elder testifies that Curry had a "history" of not getting

United States District Court
Northern District of California

United States District Court
Northern District of California

1   along with unspecified other members of the unit, and that unspecified "others" in his unit "could

2   quit" if Curry were hired.  Elder Decl. ¶ 5.  He also states without specifics that Curry had a

3   history of not getting along with other members of the unit and Sheriff's staff, and a history of

4   poor clinical judgment.  *Id*. ¶ 4.  These concerns, like the concerns of Kunz-Tao, are not generally

5   reflected in her performance appraisals and do not (based on the record before me) appear to have

6   been formally documented.  Elder also asserts that Miles Kramer told him it was a mistake to hire

7   Curry, Curry is difficult to supervise, and that prior managers of the unit, Frances Molina and

8   Kelley, had attempted to get Curry out of the unit because of the problems she caused in the unit.

9   *Id*. ¶ 5.

10        There is no direct testimony from Molina or Kelley on these points.  However, there is

11   testimony, as noted above, from Curry's co-workers, including a co-worker at MDF, that

12   contradicts Elder's assertions about Curry's performance and relationships with co-workers.

13   Kunz-Tao's reliance on Elder's comments cannot insulate Kunz-Tao's decision as there are

14   material questions of fact as to the specificity and legitimacy of Elder's comments and, therefore,

15   Kunz-Tao's reliance on them.

16        As to Robbins' superior qualifications, I find that Curry has likewise raised a material

17   question of fact as to whether reliance on Robbins' allegedly superior qualifications was

18   pretextual.  Curry notes that her work history in the detention setting was more extensive than

19   Robbins.  Declaration of Margaret Robbins ¶ 8 (noting direct work in detention unit only started in

20   December 2010); *see also* Kunz-Tao Decl. ¶ 12.  The County responds with Kunz-Tao's argument

21   that Robbins' license as a Clinical Social Worker was key.  Kunz-Tao Decl. ¶ 12 ("the best

22   educational background for social work counseling, which is the primary role of MHSC's working

23   in Detention Mental Health").  Yet, the job description for the MHCS positions at issue requires at

24   least a master's degree in psychology and *either* a license as a Clinical Social Worker (which

25   Robbins possesses) *or* a license as an MFT (which Curry possesses).  Kunz-Tao Decl., Ex. G.[7]  On

26   the facts of this record, I cannot say that Robbins' qualifications were "superior" to Curry's, and

27

28   ———————————
     [7]  I note that Bertram – who was hired into the other open position – was not a licensed Clinical
     Social Worker, but had a doctorate in psychology, like Curry.

United States District Court
Northern District of California

1    Curry has raised material questions of fact as to whether they were.

2         Based on the evidence before me, and taking all reasonable inferences from that evidence

3    in Curry's favor, I find that Curry has introduced significant and substantial evidence of pretext to

4    survive summary judgment on her age discrimination claim as to this position.[8]

5         **3.      Full-time MDF Position (#7956) That Went to Rebecca Bertram**

6         Kunz-Tao states she hired Bertram because of Bertram's superior qualifications, positive

7    comments Bertram's supervisor (Julie Kelley) made to Kunz-Tao about Bertram, and Kunz-Tao's

8    concerns about Curry.  Kunz-Tao Decl. ¶¶ 17-18.  As to Kunz-Tao's concerns with Curry, much

9    of the analysis above is applicable and, likewise, creates material issues of fact as to pretext.  With

10   respect to Bertram's "superior qualifications," Kunz-Tao declares that Bertram had more

11   experience in the field, including seven years in different correctional institutions, and experience

12   with Art therapy, which was a skill lacking in the unit.  *Id.* ¶ 18.  Considering Bertram and Curry's

13   qualifications (including Curry's license as a MFT and her doctorate, as compared to Bertram's

14   doctorate and no license), and in light of the job description, I find there are disputed issues of

15   material facts as to who had the "superior" qualifications for the #7956 position.

16        As above, based on the evidence before me, and taking all reasonable inferences from that

17   evidence in Curry's favor, I find that Curry has introduced significant and substantial evidence of

18   pretext to survive summary judgment on her age discrimination claim as to this position.

19        **B.    On-Call and Revocation of Jail Clearance**

20        On May 27, 2011 Curry complained to the County through her attorney and separately

21   through her union that she was denied the May 2011 positions because of age discrimination.

---

[8]  At oral argument, the County contended that I should discount the evidence regarding Curry's
work quality and job performance from her co-workers, because similar evidence was not
sufficient to defeat the defendant's motion for summary judgment in *Benz v. Clorox Company*,
Case No. 13-1361.  In *Benz*, however, there was consistent evidence from plaintiff's annual
reviews noting the performance issue that primarily led to her termination.  There was also
consistent contemporaneous evidence that Benz was not performing at the level required by
certain critical clients.  In the face of that evidence, Benz could not create a showing of pretext by
relying on contemporaneous evidence from *other* clients that she was performing adequately.
Here, as noted above, the County did not point to a documented history of poor performance by
Curry and, indeed, there is evidence that as late as May 25, 2011 Kunz-Tao appreciated Curry's
work and hoped she could continue her on-call work.

Curry Decl. ¶¶ 24, 26.  On June 9, 2011, she filed her EEOC charge alleging age discrimination.

*Id.* ¶ 27.   On June 21, 2011, Curry's union faxed a letter to Kunz-Tao informing her that Curry

filed a grievance because the County failed to hire her for the open May 2011 positions because of

age discrimination.  *Id.* ¶ 28.  Curry alleges that in retaliation for her complaint of age

discrimination, in late May and June 2011 Kunz-Tao retaliated against her by not assigning any

more on-call shifts to Curry at the jail.

Curry's evidence of retaliation is that prior to May 2011, Curry had on average secured

two to three on-call shifts per month at the jail.  Curry Decl. ¶ 29.  Kunz-Tao did not assign Curry

the first and last weekend shifts in July, although those were shifts Curry normally worked and

they were "available."  Instead, Kunz-Tao assigned those shifts to others.  *Id.* ¶ 25.  Curry also

asserts that at least one other on-call employee was assigned shifts in July and August.  *Id.* ¶ 29 &

Ex. 8.

In support of the County's motion, Kunz-Tao declares that at some point in or by May

2011, she had developed a new schedule where there were "many fewer" open or on-call slots.

Kunz-Tao Decl. ¶ 20.  Kunz-Tao also says that at some undisclosed time "prior" to the June 4th

and June 24th incidents, she had already made a decision to "limit" her use of Curry for on-call.

*Id.* ¶ 23.  Kunz-Tao does not say what led her to that decision or when it was made.  However, I

note that on May 25, 2011, Kunz-Tao told Curry in the email that she "appreciated the

enthusiasm" Curry showed for her work at the jail and Kunz-Tao also "hoped" that Curry would

continue to work on-call for MDF.  Curry Decl. Ex. 4.   Kunz-Tao also declares that based on a

complaint from an inmate and a Sheriff's deputy about Curry's counseling on June 4th, and the

incident on June 24th when she gave a jail tour to two new Clinic employees, Kunz-Tao decided

not to use Curry for any more on-call shifts.  *Id.* ¶¶ 21-23; *see also* Kunz-Tao Decl., Ex. E

(informing co-workers that Curry will not be used for future on-call because of "too many

complaints").

Neither the June incidents nor Kunz-Tao's questions about Curry's professional judgment

were mentioned as grounds for the reduction of Curry's on-call work in the County's September 2,

2011 response to the EEOC.  Reid Decl., [Docket No. 102], Ex. 6 at pg. 6.  Instead, the County

United States District Court
Northern District of California

United States District Court
Northern District of California

relied only on the fact that the "permanent schedule change" significantly reduced the need for on-call staff. *Id*.

I find that Curry has raised a question of material fact as to the County's alleged justifications for not using Curry for further on-call work. Kunz-Tao's states in her declaration that at *some* undisclosed point prior to June 4th, she had decided to limit her use of Curry on-call, but that is arguably contradicted by her comment to Curry on May 25 that Kunz-Tao hoped Curry would still work on-call. Moreover, while the June 4 and 24 incidents weigh heavily in Kunz-Tao's declaration as her justification for not providing any additional on-call work to Curry, those incidents are not mentioned in the County's EEOC response. Also, there is no evidence that the June 4th issue was raised with Curry prior to the termination of her on-call work, and the seriousness of the June 24th incident is disputed. In sum, the shifting rationales for reducing and then terminating Curry's on-call work, and the County's failure to rebut Curry's evidence regarding others who were still being offered on-call work despite the scheduling change, raises material questions of fact on pretext sufficient for Curry to survive summary judgment on this claim.[9]

### C. October 2011 MHCS Position That Went to David Ezra

Curry alleges that she was retaliated against when Ezra was hired into this position (one which he had held and vacated a few months prior) and not her.[10] Curry points out that there were

---

[9]  I do not find sufficient evidence to support Curry's claim that the withdrawal of her jail clearance is a *separate* retaliation claim, although the facts surrounding the decision to refuse to renew Curry's clearance is potentially relevant to Curry's claim that the cessation of her on-call work was retaliatory. In particular, the County's evidence establishes that Curry's jail clearance had expired, and it was not renewed because Curry was no longer performing on-call work at the jail as of the end of June. *See* Declaration of Chris Vannoy ¶ 4 ("Standard protocol at MDF requires that individuals no longer working at the MDF return their issued badges and keys."); Curry Decl. ¶ 31 (Curry was told her jail clearance was not renewed because she was no longer working at the jail). Relatedly, Curry has not raised a material issue of fact to demonstrate that she cannot perform her current job without jail credentials. While she declares that she cannot perform her "full Forensic Mental Health Clinical Specialist duties in working with clients," she does not explain why that is. She also asserts, without explanation, that she cannot "do the work" of the Forensic Multidisciplinary Team without clearance. Curry Decl. ¶ 34. Without specific facts to support her claim, I cannot find that she has made a prima facie case of an adverse employment action as retaliation for the removal of her jail clearance on its own.

[10]  As Ezra was not substantially younger than Curry at the time, she cannot base an age discrimination claim on the selection of Ezra.

23

United States District Court
Northern District of California

1   only two applicants for this position, Ezra and Curry; argues that she was as qualified as Ezra; and

2   asserts that if Kunz-Tao was really concerned about retiring employees, Curry should have been

3   given the position when Ezra had vacated it only months prior and Ezra was retiring soon.  Kunz-

4   Tao explains that Ezra was hired by her and Elder because of Ezra's "superior" qualifications and

5   better "fit."  Kunz-Tao Decl. ¶ 24.  At that time, Ezra had worked in the unit for eight years, had

6   been responsible for providing important training to Sheriff's staff, was well-regarded, got along

7   with other members of staff, and was able to impose a 5150 hold.  *Id.*

8          As to qualifications, Ezra and Curry seem on par and Ezra does not appear to have

9   "superior" qualifications, contrary to the County's characterization.  Ezra may well have been a

10   better fit and more liked within the unit than Curry, but Curry has raised at least some evidence to

11   dispute the County's characterization of her working relationships and style.  And while Kunz-Tao

12   admits that she was concerned in May 2011 about the near retirement of members of the unit

13   (including, according to Curry, Ezra), she does not explain why Ezra was a better choice for this

14   position than Curry in light of Ezra's apparent intent to retire in the near future.

15          There are issues of fact as to pretext for retaliation in light of the County's justifications for

16   hiring Ezra over Curry.

17   D.  **November 2011 Job Exchange**

18          Curry argues that the County's failure to approve the proposed job exchange between

19   Curry and Shafer was retaliatory.  However, Curry has failed to meet her burden to show a prima

20   facie case of retaliation.  In particular, Curry cites to no evidence that a position at West County

21   was in fact open or approved in light of Shafer's needs to transfer, that others in the County had in

22   fact approved such an exchange, or that Kunz-Tao or Kelley rejected the exchange for any reason

23   other than the fact it was not customary and it was not approved.

24          Curry relies on the declaration of Barbara Shafer who states that when her need for an

25   ADA accommodation arose, she discussed the possibility of an exchange with Susan Skamser.

26   According to Shafer, Skamser told her that both Shafer's union representative and the Disability

27   Benefits Coordinator, Debbie Cowden, had given their approval for the exchange.  Declaration of

28   Barbara Shafer [Docket No. 104], ¶ 6-7.  But there is no evidence provided by Curry that any of

United States District Court
Northern District of California

1   the supervisors or managers at CAMHC (where Curry worked) or at West County (where Shafer

2   worked) knew about the proposed exchange much less approved it, or that such an exchange had

3   occurred in the past or could occur without the input of the directors in those units.  Indeed,

4   Curry's own email to Kunz-Tao and Julie Kelley inquiring about the exchange indicated that she

5   "had been advised" that the transfer was approved, wanted to know if that was "still" the County's

6   position, and if not, what she needed to do to apply for Shafer's position at West County.  Supp.

7   Baker Decl. [Docket No. 110], Ex. Q.

8        Kunz-Tao's supervisor, Julie Kelley, testified that the County "does not 'authorize'

9   position exchanges."  *Id.*  Kelley also testified that she had never encountered a similar situation

10  before and that she expected that she would have heard from "risk management" in the County

11  about any ADA need for a job exchange, which she did not.  Supp. Baker Decl., Ex. Q, Kelley

12  Depo. at 67:8-19; 69:8-18.  An email from Skamser indicated that the proposed exchange was "not

13  approved," but simply being investigated for Shafer.  *See, e.g.,* Curry Decl., Ex. 10 (email from

14  Susan Skamser); *see also* Skamser Depo. [Ex. I to Amended Baker Decl] at 35:9-14 (testifying

15  that she had never arranged a position exchange before).

16       Without evidence that the proposed exchange was in fact approved by others but then

17  denied by Kunz-Tao or Kelley (acting on behalf of Kunz-Tao) in retaliation, or that such

18  exchanges had occurred in the past, Curry fails to make a prima facie case of retaliation as to the

19  proposed November 2011 transfer.

20  **E.  February 2012 MHCS Position That Went to Pena**

21       Curry argues that the County's failure to consider and/or hire her for the February 2012

22  open position (#7956) was both discriminatory and retaliatory.  Curry, however, has failed to

23  make a prima facie case and failed to raise a material question as to pretext.  The position was, at

24  the time Curry applied for it in 2012, flagged as Spanish-speaking and the County hired a Spanish

25  speaker to fill the open position (Pena).  Kunz-Tao Decl. ¶ 26.  Kunz-Tao does not explain why

26  this position was flagged as Spanish-speaking, but simply declares that she has flagged positions

27  in her unit as Spanish-speaking.  *Id*.  Curry argues that the designation of the position as Spanish-

28  speaking was itself pretextual – presumably in an attempt to prevent Curry from being eligible to

apply for it – because it was not a Spanish-speaking position in May 2011 when Curry originally applied for it and it was awarded to Bertram.  Oppo. at 24; Curry Decl. ¶ 39.  However, Curry fails to point to any *evidence* to raise a question of material fact showing that the County intentionally redesignated the position to Spanish-speaking or that there was no need at that time for a Spanish-speaking position.[11]

Because Curry fails to point to any evidence that she was qualified for the Spanish-speaking position or that the County intentionally redesignated the position as Spanish-speaking in order to prevent Curry from applying, the County's Motion for Summary Judgment is granted as to this claim.

### F. BHC Position

Curry claims that the failure to the County to offer her the Behavioral Health Court position in spring 2012 was both discriminatory and retaliatory.  The County argues that Curry cannot show a prima facie case or pretext for retaliation because Curry did not interview well and Kunz-Tao was not the decision maker, but instead deferred to Martha Wilson and Victoria Brown who ran the interviews.  Specifically, Kunz-Tao declares that Wilson and Brown were "principally responsible" for conducting the interviews and selecting the candidate, and that she "deferred" to Wilson and Brown's selection.  Kunz-Tao Decl. ¶ 25.  Wilson likewise confirms that she and Brown were "principally" responsible for selecting the individual to fulfill the position.  Wilson Decl. [Docket No. 69] ¶ 4.  Wilson and Brown's position is that Curry did not respond "appropriately" to the questions and did not answer the questions, but instead talked about other subjects.  *Id.* ¶ 5.  In rejecting Curry, Brown also relied on an incident at BHC where she believed Curry acted inappropriately with a client.  *Id.* ¶ 6.  As a result, Wilson states that she and Brown "jointly selected another individual to fill the MHCS position" and "we" informed Kunz-Tao of their decision to hire another individual.  *Id.* ¶ 7.[12]

---

[11]  Curry's only point on pretext is that "one can sadly probably assume" that the need for Spanish-speaking MHCS staff "has been the case for a while."  Oppo. at 24.  However, assumptions cannot carry Curry's burden, she must point to evidence to support her pretext for retaliation argument on summary judgment.

[12]  Curry cannot bring a discrimination claim based on the BHC position because she submits no evidence as to who was eventually hired (much less evidence showing that a substantially younger

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Curry does not address or respond to the performance in the interview statements made by

2    Wilson.  Instead, she argues that her background demonstrates her extensive qualifications for the

3    position.  Curry Decl. ¶ 40; Oppo. at 24-25.  Nevertheless, I find that there is a material question

4    of fact created by the County's shifting explanation of Kunz-Tao's role in the process for the

5    hiring of the BHC position.  Kunz-Tao admits that she sat in on the interview, and that Wilson and

6    Brown were "principally" but not solely responsible for the decision not to hire Curry.  More

7    importantly, it was Kunz-Tao who informed Curry that she did not get the position, and in her

8    email to Curry, explained that "*we* completed our interviews and have decided to interview more

9    candidates.  You were not selected because *we* are particular about finding the right fit . . . . *We*

10   had mutual consensus."  Curry Decl., Ex. 13.  The fact that Wilson and Brown may have selected

11   another unidentified candidate at an unidentified time (Wilson Decl. ¶ 7) does not eliminate the

12   fact – taking all inferences in Curry's favor – that Kunz-Tao was involved in the decision not to

13   hire Curry, despite her current position to the contrary.

14          Taking the inferences of this evidence in Curry's favor, the County's attempt to show that

15   Kunz-Tao was not a decision-maker for the BHC position is inconsistent, and creates a question of

16   fact as to pretext.

17   **G.  Fall 2012 MHCS Positions**

18          Finally, with respect to the Fall 2012 positions, Curry alleges that in September 2012, there

19   were two MHCS positions posted.  Curry Decl. ¶ 41.  Curry does not attach the postings for those

20   positions, describe the basis for her belief that there were two positions open, or describe the

21   requirements for those positions.  In response to Curry's inquiry about the two open positions,

22   Kunz-Tao responded that there was only one part-time position open for a Spanish speaker.  Curry

23   Decl., Ex. 14.  Curry cites no evidence that anything other than the one part-time Spanish-

24   speaking position was actually open and points to no evidence that the designation of that one

25   part-time position as Spanish-speaking was directed at her or otherwise retaliatory.  In short, Curry

26   has failed to make a prima facie case of discrimination or retaliation as to these positions.

27

28   person was hired).  She has, therefore, failed to make a prima facie case as to age discrimination.

United States District Court
Northern District of California

1    Summary judgment is GRANTED to the County on this claim.

2    **III. EXHAUSTION**

3    Curry filed her EEOC charges alleging age discrimination and retaliation in June and

4    August 2011.  The County argues that any acts after August 2011 were not covered by an EEOC

5    charge and have, therefore, not been exhausted.  In the Ninth Circuit, allegations of discrimination

6    not included in a plaintiff's EEOC charge can nonetheless be considered by the Court where the

7    new claims are "like or reasonably related" to the allegations contained in the EEOC charge.  *See,*

8    *e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002).  In making that

9    determination, the Court considers the alleged basis of the discrimination, dates of discriminatory

10   acts including within the charge and the "new" acts, the alleged perpetrators, the locations of the

11   acts in the charge and the "new" acts, and whether the new acts are "consistent with the plaintiff's

12   original theory of the case."  *Id.*

13   I find that the acts of discrimination or retaliation following the August 2011 EEOC charge

14   are "like or reasonably related" to the acts Curry complained of in her June and August charges.

15   The basis of the post-August 2011 claims are the same as the basis for Curry's June and August

16   EEOC charges – Kunz-Tao discriminated and retaliated against Curry.  The fact that other

17   decision-makers may have been involved in one of the claims (Wilson and Brown), does not

18   undermine this conclusion because Curry has raised a material question of fact as to Kunz-Tao's

19   role in that process.  Moreover, the period of time between the EEOC charges and the other

20   conduct Curry claims is actionable is short; August 2011 through 2012.

21   I DENY the County's motion for summary judgment on failure to exhaust.[13]

22   **CONCLUSION**

23   For the foregoing reasons, I GRANT in part and DENY in part defendant's Motion for

24

25   [13]  The County argues that summary judgment should be granted on Curry's failure to prevent
26   discrimination and harassment claim under California Government Code section 12940(k),
     because Curry fails to allege any facts demonstrating harassment and Curry has failed to survive
27   summary judgment on her age discrimination claim.  Motion at 23-24.  I agree that Curry has not
     stated any facts to support a harassment claim, but because I find Curry raises issues of material
28   fact precluding summary judgment on her age discrimination claims, the County's motion for
     summary judgment as to the section 12940(k) claim based on discrimination is DENIED.

Summary Judgment.  The following claims survive summary judgment:  (i) age discrimination in failing to hire Curry for the two full-time MHCS positions in May 2011; (ii) retaliation in terminating Curry's on-call work; (iii) retaliation in failing to hire Curry for the MHCS position in Fall 2011; and (iv) retaliation for failing to hire Curry for the BHC position.

I also DENY defendant's Motion re Ex Parte Contacts and DENY plaintiff's related motion for sanctions.

**IT IS SO ORDERED**.

Dated: April 30, 2014



_____
WILLIAM H. ORRICK
United States District Judge